MISSISSIPPI STATE HIGHWAY COMM. *v.* BURWELL, et al.

In Banc. March 28, 1949.

(39 So. (2d) 497)

John M. Kuykendall, Jr., for appellant.

492

Gilbert & Cameron, for appellees.

**Roberds, J.**

This is a proceeding by which the Mississippi Highway Commission seeks, by condemnation, to obtain title to 27.9 acres of land for use as a public highway. The jury returned a verdict in the sum of $5,000.00 The only question involved is whether the verdict is manifestly excessive.

The land condemned is a part of a tract of 100 acres. Four witnesses testified for the condemnor, other than its engineer. The four were entirely disinterested. In fact three of them were real estate men of long experience and a low value might be considered against their interests. The four estimated the damage to the owners from

$697.50 to $1,400.00 They measured the damage by the value of the land taken plus the damage, if any to the remainder of the tract, testing that by the comparative value before and after such taking, which is the correct rule for ascertaining the entire damage. Baker v. Mississippi State Highway Commission, Miss., 37 So. (2d) 169.

Four witnesses, other than Henry Burwell, one of the owners, testified for defendants. One estimated the value of the land taken at $100 per acre without qualifying his testimony under the before and after value rule. Another placed a value on the land to be taken at $100 per acre and thought that after such taking the remainder would be worth $75 per acre. He owned land adjoining the 100 acre tract. Naturally, it was to his interest to place a high value on land adjoining his. This man also added, as an important element of damage, as he expressed it, ". . . you are cutting Mr. Burwell away from the railroad". There is no evidence whatever that the taking of the 27.9 acres would prevent Burwell having access to the railroad. It is clear from the record that is not a fact. The owner did not even reside upon this 100 acre tract. Another witness for the owner placed a value of $100 per acre on the tract and $100 per acre on the remainder. He said he would not pay $75 per acre for it and did not know whether he would pay $50 an acre. He included, as an item of damage, inconvenience in getting timber to a sawmill which he assumed would result from a construction of the highway. It is not shown in what manner, or to what extent, the construction of the road would have interfered with getting timber to the mill. The witness admitted he did not know whether the mill was located on the 100 acre tract, and it finally developed it was not located on that tract. The other witness placed a value of $250 on the land to be taken, without qualifying his estimate by the before and after taking rule. Indeed, he and one of the other witnesses for the owners, measured their values by what they had understood some oil, or other corporation, had

paid for a small parcel of land, located some distance from the land in question, apparently surrounded by much more favorable conditions than the lands in question. This witness also attached considerable importance to the assumed interference in hauling timber to the sawmill. Finally, however, when pressed to give him opinion of the fair market value of the entire tract, he replied ''I wouldn't attempt to.''

It is shown without dispute that there were only two or three acres in cultivation on the whole tract; that it had been used mainly for pasture; that the land to be taken was low and wet.

It is clear that the high-estimate witnesses attached much value to speculative elements, such as the possibility that the growth of the City of Meridian would some day approach this land sufficiently near to increase the value thereof. It is evident the estimates of these witnesses were largely guesswork. The two witnesses for the owners who properly qualified their testimony by the before and after value estimated the damage to the owners at $100 per acre for the land taken. That would aggregate $2,790.00. No verdict for a larger sum should be permitted to stand on this record. If appellees will enter a remittitur reducing the judgment to that amount, the verdict and judgment will be affirmed; otherwise the case will be reversed and remanded for trial before another jury.

Affirmed with remittitur.

### ON MOTION TO CORRECT JUDGMENT.

In Banc. May 9, 1949.

(40 So. (2d) 263)

**Montgomery, J.**

On a former day we affirmed the judgment of the trial court with remittitur, and judgment was entered by the Clerk here without interest, without the five per cent damages allowed by Section 1971 of the Code of 1942, and taxing the costs on appeal against the appellee. Appellee has moved the Court to correct the judgment in the above particulars.

With reference to the allowance of interest and the taxing of the costs against appellant, we are of the opinion that this is controlled by State Highway Commission v. Mason, 192 Miss. 576, 4 So. (2d) 345, 6 So. (2d) 468, and the judgment is hereby corrected so as to allow interest at six per cent upon the balance of the judgment rendered in the lower court, after entering the remittitur, same to run from the date of the rendition of the judgment there.

The appellee is not entitled to recover the five percent damages. In Vicksburg S. & P. R. R. Co. v. Lawrence, 78 Miss. 86, 28 So. 826, and Howie et al. v. Bonds, 87 Miss. 698, 4 So. 257, we held that in case of the affirmance of a judgment by the Supreme Court upon remittitur of a part thereof, the appellee is not entitled to recover the five percent damages, and this is true whether the action be ex contractu or ex delicto.

Accordingly, the motion will be sustained so as to allow interest at six percent on the judgment, exclusive of the remittitur, overruled as to the allowance of the five percent damages and the costs of the appeal will be assessed against the appellant, Mississippi State Highway Commision.

Motion sustained in part and overruled in part.